22 F.3d 1185
 306 U.S.App.D.C. 103
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Roland Antonio VAUGHN, Appellant.
 No. 93-3061.
 United States Court of Appeals, District of Columbia Circuit.
 April 1, 1994.
 
 Before: MIKVA, Chief Judge, SILBERMAN and BUCKLEY, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the record on appeal from the United States District Court for the District of Columbia, and was briefed and argued by counsel. While the issues presented occasion no need for a published opinion, they have been accorded full consideration by the Court. See D.C.Cir.R. 36(b) (January 1, 1994). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by this Court, that the judgment of the District Court appealed from in this cause is hereby affirmed for the reasons set forth in the accompanying memorandum. It is
 
 
 3
 FURTHER ORDERED, by this Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 41(a)(1) (January 1, 1994). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Vaughn appeals the district court's denial of his motion to suppress evidence that allegedly was seized in violation of the Fourth Amendment. He argues that officers who stopped him lacked the reasonable suspicion necessary for a Terry stop and that even if there was reasonable suspicion, the "seizing" of his hand exceeded the bounds of any Terry stop.
 
 
 5
 Police received an anonymous phone tip on October 15, 1992, which described a black male, wearing a green-yellow shirt, and white pants who was selling drugs in the vicinity of 429 20th St. N.E., Washington, D.C. The caller asserted that she had just seen appellant make a drug sale and that she was familiar with other sales made in the past. The tipster also provided innocent details regarding the appellant's family and living arrangements. Officer Anthony Haythe, responding to a radio assignment, went to the area of 429 20th St. N.E., which Haythe testified was a place known for the sale of crack cocaine. After arriving at the scene, Officer Haythe observed appellant wearing a lime-green shirt and white pants. He exited his car, and along with another officer, approached appellant. When Haythe was within five feet of appellant and before Haythe had said anything, Vaughn abruptly shoved his right hand into his pants pocket. Officer Haythe then either said "What's in your pocket?" or, alternatively, "Take your hand out of your pocket." After appellant failed to answer or take his hand out of the pocket, Officer Haythe grabbed appellant's arm and pulled the hand from the pocket. As the hand emerged from the pocket, Officer Haythe saw the hand enveloping a white bag and one ziplock bag with a white substance within it. Officer Haythe then forced open Vaughn's hand, discovered six ziplock bags containing a white substance, and subsequently arrested Vaughn.
 
 
 6
 As he did before the district court at the suppression hearing, Vaughn contends that the anonymous tip regarding his drug distribution was not sufficient to support the reasonable suspicion necessary for a Terry stop. See Terry v. Ohio, 392 U.S. 1 (1968). Appellant acknowledges that informants' tips can provide a basis for reasonable suspicion, but asserts that the information provided in this tip did not provide the required quantum of evidence. Relying upon Alabama v. White, 496 U.S. 325 (1990), Vaughn asserts that the proper question is "whether the tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." Id. at 326-27. Where a tip is anonymous, appellant contends that White requires that independent police corroboration of the tip take place before the police have the required degree of suspicion. Id. at 329. In White, an anonymous tipster had successfully predicted White's future actions, thus providing evidence that the tipster was intimately familiar with White's drug activities.
 
 
 7
 Vaughn recognizes that this court in United States v. Clipper, 973 F.2d 944, 949 (D.C.Cir.1992), cert. denied, 113 S.Ct. 1025 (1993), held that an anonymous tip can provide a sufficient basis for a Terry stop even in the absence of information predicting future behavior. Appellant contends, however, that Clipper is limited to guns and does not cover tips regarding drugs. Where an anonymous tip involves drugs, substances less dangerous than a weapon, there must be predictive information that is corroborated by police observation in order to establish reasonable suspicion.
 
 
 8
 Appellant's argument is rather unconvincing. Whether a Terry stop is permissible depends on whether reasonable suspicion exists based on the "totality of the circumstances." See Illinois v. Gates, 462 U.S. 213 (1983); see also Clipper at 973 F.2d at 949. With respect to anonymous tips, we ask whether that tip "has been subject to corroboration sufficient to provide police officers with 'legitimate reasons to believe that the tip was reliable.' " Clipper, 973 F.2d at 948 (quoting United States v. McClinnhan, 660 F.2d 500, 502 (D.C.Cir.), cert. denied, 454 U.S. 924 (1981)). Here there was ample reason to stop and frisk Vaughn. First, the tipster displayed an intimate familiarity with the drug-related activities of appellant. The tipster asserted that she had just seen Vaughn trade in drugs and provided a description of him to the police. The sale that the tipster claimed to have witnessed took place in an area known for the sale of crack cocaine. Though the only details the police corroborated were completely innocent (Vaughn's physical description), we have previously held that confirmation of even innocent details can provide a basis for a stop. See United States v. McKie, 951 F.2d 399, 402 (D.C.Cir.1991). Finally, Vaughn's sudden thrust into his pants pocket as Officer Haythe approached him provided more evidence of suspicious, illegal activity. Taken together, these circumstances provide the requisite suspicion for a Terry stop.
 
 
 9
 Alternatively, appellant insists that even if there was reasonable suspicion, the search here exceeded the bounds of a Terry stop when Officer Haythe forcibly removed Vaughn's hand from Vaughn's pants pocket. Officer Haythe did not testify that he was ever concerned that appellant might be carrying a weapon. Frisks under Terry are to be conducted only for the protection of the officer and not as a method of searching for evidence of illegal activity. When Haythe grabbed appellant's hand without even inquiring into possible criminal activity, so the argument goes, Haythe was more likely searching for drugs rather than undertaking a protective, precautionary frisk.
 
 
 10
 Once again, Vaughn's argument does not persuade us. Officer Haythe's reaction to Vaughn's hand-thrusting seems eminently reasonable. Indeed, we think it would have been unreasonable for any officer not to yank appellant's hand from his pocket in this situation. Officer Haythe had information that Vaughn was a drug dealer and could reasonably conclude that Vaughn might be carrying a weapon, since many drug dealers carry weapons for protection. Upon seeing appellant make an abrupt lunge into a pocket, Officer Haythe had every reason to be apprehensive and to act as he did. The whole point of a protective search conducted under the aegis of the Terry stop is to secure the officer's safety while investigating suspected criminal activity. Where a target of a Terry stop makes abrupt movement towards areas of his body that might harbor a weapon, officers have good reason to be wary and to take adequate precautionary measures. See United States v. Laing, 889 F.2d 281, 285 (D.C.Cir.1989), cert. denied, 494 U.S. 1069 (1990) (the "force used to carry out the stop and search must be reasonable, but may include using handcuffs or forcing the detainee to lie down to prevent flight").
 
 
 11
 Though this case would have been even easier had Officer Haythe testified that he was worried about his safety when he yanked appellant's hand out of his pocket, our test regarding Haythe's actions is one of objective reasonableness. As we stated in Mckie, "[W]e are not limited to what the stopping officer says or to evidence of his subjective rationale; rather, we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious." 951 F.2d at 402 (citations omitted). Given that it would have been unreasonable for Officer Haythe not to have taken the steps that he did, we believe that his actions were indisputably permissible.
 
 
 12
 Accordingly, the district court's judgment is affirmed.